UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------

EMILY C.D.,

                    Plaintiff,       <u>DECISION AND ORDER</u>
                                        1:24-CV-01292-GRJ

     v.

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
-----------------------------------------------------

GARY R. JONES, United States Magistrate Judge:

In November of 2020, Plaintiff Emily C.D.[1] applied for Disability Insurance Benefits under the Social Security Act. The Commissioner of Social Security denied the application.  Plaintiff, represented by Olinsky Law Group, Howard D. Olinsky, Esq., of counsel, commenced this action seeking judicial review of the Commissioner's denial of benefits under 42 U.S.C. §§ 405 (g) and 1383 (c)(3).  The parties consented to the jurisdiction of a United States Magistrate Judge. (Docket No. 7).

This case was referred to the undersigned on July 31, 2024. Presently pending are the parties' requests for Judgment on the Pleadings under Rule 12 (c) of the Federal Rules of Civil Procedure. For the following

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2 (c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

reasons, Plaintiff's request is due to be granted, the Commissioner's request is due to be denied, and this case is remanded for further administrative proceedings.

## I.  BACKGROUND

### A.    Administrative Proceedings

Plaintiff applied for benefits on November 10, 2020, alleging disability beginning June 25, 2020. (T at 77-78).[2]  Plaintiff's application was denied initially and on reconsideration.  She requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was held on September 22, 2022, before ALJ Michael Stacchini. (T at 29-67). Plaintiff appeared with an attorney and testified. (T at 40-61). The ALJ also received testimony from Renee Jubrey, a vocational expert. (T at 61-65).

### B.    ALJ's Decision

On November 18, 2022, the ALJ issued a decision denying the application for benefits. (T at 8-28).  The ALJ found that Plaintiff had not engaged in substantial gainful activity since June 25, 2020 (the alleged onset date) and meets the insured status requirements of the Social Security Act through December 31, 2025 (the date last insured). (T at 13-14).

---

[2] Citations to "T" refer to the administrative record transcript at Docket No. 8.

The ALJ concluded that Plaintiff's residual effects from cerebrovascular accidents, antiphospholipid antibody syndrome, deep vein thrombosis, obesity, cardiomyopathy/Libman-Sacks endocarditis, hypertension, neurocognitive disorder, anxiety disorder, and dysthymic disorder were severe impairments as defined under the Act. (T at 14).

However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 403, Subpart P, Appendix 1. (T at 14).

At step four of the sequential analysis the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work, as defined in 20 CFR 404.1567 (b), with the following limitations: she can perform no more than occasional climbing ramps and stairs; no climbing ladders, ropes, or scaffolds; is limited to occasional balancing, stooping, kneeling, crouching, and crawling; and can engage in frequent handling and fingering. (T at 16).

In addition, the ALJ found that Plaintiff was able to understand, remember and carry out simple routine tasks with regular breaks at 2-hour intervals, could not perform work at a quick production rate, such as assembly line work, but could perform goal-oriented work, such as an office cleaner. (T at 16).

The ALJ concluded that Plaintiff could not perform her past relevant work as a licensed practical nurse. (T at 21).

However, considering Plaintiff's age (43 on the alleged onset date), education (at least high school), work experience, and RFC, the ALJ determined that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (T at 22).

As such, the ALJ found that Plaintiff had not been under a disability, as defined under the Social Security Act, and was not entitled to benefits for the period between June 25, 2020 (the alleged onset date) and November 18, 2022 (the date of the ALJ's decision). (T at 23).

On January 4, 2024, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (T at 1-7).

C.    *Procedural History*

Plaintiff commenced this action, by and through her counsel, by filing a Complaint on February 21, 2024. (Docket No. 1).  On June 28, 2024, Plaintiff filed a brief requesting judgment on the pleadings. (Docket No. 13). The Commissioner interposed a brief requesting judgment on the pleadings on September 5, 2024. (Docket No. 14).  On September 20, 2024, Plaintiff submitted a reply brief in further support of her request. (Docket No. 15).

## II.  APPLICABLE LAW

### A.    Standard of Review

"It is not the function of a reviewing court to decide de novo whether a claimant was disabled." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). The court's review is limited to "determin[ing] whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard." *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam).

The reviewing court defers to the Commissioner's factual findings, which are considered conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal quotations omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted).

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear, remand "for further development of the evidence" or for an explanation of the ALJ's reasoning is warranted.  *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

### B.    *Five-Step Sequential Evaluation Process*

Under the Social Security Act, a claimant is disabled if he or she lacks the ability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...."  42 U.S.C. § 423(d)(1)(A).

A claimant's eligibility for disability benefits is evaluated pursuant to a five-step sequential analysis:

1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.

3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without

considering vocational factors such as age, education, and work experience.

4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.

*See Rolon v. Commissioner of Soc. Sec*., 994 F. Supp. 2d 496, 503 (S.D.N.Y. 2014); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

The claimant bears the burden of proof as to the first four steps; the burden shifts to the Commissioner at step five. *See Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). At step five, the Commissioner determines whether claimant can perform work that exists in significant numbers in the national economy. *See Butts v. Barnhart*, 416 F.3d 101, 103 (2d Cir. 2005); 20 C.F.R. § 404.1560(c)(2).

## III.  DISCUSSION

Plaintiff raises one main argument in support of her request for reversal of the ALJ's decision.  In sum, Plaintiff contends that the ALJ did not adequately explain or justify the conclusion that she retained the RFC to perform frequent handling and fingering activities with her hands.

Plaintiff argues that this was reversible error given evidence in the record, including her subjective complaints, which suggests a greater degree of impairment.

A claimant's "residual functional capacity" ("RFC") is his or her "maximum remaining ability to do sustained work activities in an ordinary work setting on a continuing basis." *Melville*, 198 F.3d at 52 (quoting SSR 96-8p).

When assessing a claimant's RFC, an ALJ must consider medical opinions regarding the claimant's functioning and make a determination based on an assessment of the record as a whole. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.9527(d)(2) ("Although we consider opinions from medical sources on issues such as ...your residual functional capacity...the final responsibility for deciding these issues is reserved to the Commissioner.").

As noted above, the ALJ found that Plaintiff retained the RFC to perform a reduced range of light work, including the ability to engage in frequent handling and fingering. (T at 16).

For the following reasons, the Court finds that the ALJ's assessment of Plaintiff's ability to perform handling and fingering must be revisited on remand.

There is no dispute as to *whether* Plaintiff has limitation in her ability to handle and finger (the ALJ found that she is limited). The question is the *extent* of that limitation.

The Court must ensure that the ALJ engaged in an appropriate analysis and provided an adequate explanation because resolution of this question is material to the disability determination.

Resolution of the question is material because the vocational expert testified that a hypothetical claimant with the limitations set forth in the ALJ's RFC determination, including a limitation to *frequent* handling and fingering, could not perform Plaintiff's past relevant work, but could perform other work that exists in significant numbers in the national economy. (T at 62-63). The expert identified three representative occupations that such a claimant could perform. (T at 62-63).

Notably, however, the vocational expert testified that a claimant with the identified RFC restrictions, but who was limited to no more than *occasional* handling or fingering could not perform any of the representative occupations. (T at 64).

As a matter of law, "the crucial factors in any determination must be set forth with sufficient specificity to enable [the reviewing court] to decide whether the determination is supported by substantial evidence." *Ferraris v.*

*Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).  Remand is required where the ALJ failed to provide an "adequate 'roadmap' for his reasoning." *Almodovar v. Berryhill*, No. 17-CV-8902 (BCM), 2019 U.S. Dist. LEXIS 48612, at *18 (S.D.N.Y. Mar. 22, 2019).

In the present case, the ALJ's discussion of Plaintiff's hand issues was conclusory and does not provide an adequate roadmap for his reasoning.

The ALJ recognized Plaintiff's hand complaints, noted that they were supported by "findings of some reduction of fine dexterity" in the record, and concluded that Plaintiff was limited to no more than frequent handling and fingering. (T at 16, 20).

There is no meaningful discussion, however, explaining how the ALJ reached the conclusion that Plaintiff could perform frequent handling and fingering (as opposed to a more restrictive assessment).

The ALJ made conclusory reference to Plaintiff's "largely normal exams and wide range of activities of daily living" to support/explain his RFC determination. (T at 20).

The record, however, is not sufficient, without further development or discussion, to sustain the conclusion that Plaintiff can perform frequent handling and fingering.

Plaintiff consistently complained of pain and other problems with her hands, including difficulty grasping and a numb sensation. (T at 244, 412, 463, 469, 471).  In a disability form, Plaintiff reported, *inter alia*, that she experienced right hand pain with repetitive motion and difficulty grasping, pushing, and pulling. (T at 251).  During the administrative hearing, Plaintiff testified that she has: "issues with picking stuff up and dropping it. I feel like I'm holding onto it, and then it just drops to the ground, a bottle of soda, or anything that size." (T at 50).  She explained that medication provides some pain relief but does not help with stiffness or problems gripping. (T at 59).

An arterial duplex of the right upper extremity revealed increased velocity distal radial, which "may suggest stenosis more distally in [the] hand." (T at 469). Neuropsychological testing showed impairment in psychomotor/processing speed with the right hand and borderline findings with respect to the left. (T at 418).  Dr. Carolyn F. Certilman, an examining neuropsychologist, reported that Plaintiff's "[f]ine motor speed/dexterity was impaired with her dominant (right) hand and borderline with her non-dominant hand." (T at 414).

Two State Agency review physicians assessed no physical limitations (T at 87, 101), but the ALJ found these opinions only "partially persuasive,"

concluding, *inter alia*, that they did not adequately account for Plaintiff's problems with "fine dexterity." (T at 20).

Regarding Plaintiff's activities of daily living, the ALJ noted that she reporting mowing the lawn, gardening, and performing basic household chores. (T at 20). However, this does not account for Plaintiff's testimony that she performed these activities on a limited basis and/or with assistance and experienced increased symptoms thereafter. (T at 47, 61, 245, 246). Moreover, these activities do not establish, self-evidently, the ability to perform frequent handling and fingering on a sustained basis over the course of a normal workday and workweek.

Although not precisely on point,[3] the Second Circuit's decision in *Mariani v. Colvin*, 567 F. App'x 8 (2d Cir. 2014), as amended (July 30, 2014), is instructive. Fundamentally, *Mariani* stands for the proposition that when faced with conflicting or ambiguous evidence concerning a claimant's capabilities, the ALJ cannot reconcile the conflict or address the ambiguity

---

[3] The Commissioner attempts to distinguish *Mariani* by noting that the record included a medical opinion finding that the claimant had "no use" of the right hand. The record here includes no such opinion. However, there is evidence of impairment (discussed above), which the ALJ recognized and accepted as indicating limitation in Plaintiff's ability to use her hands. The ALJ's error was in failing to support and explain his decision that the limitation went "this far and no farther" and left Plaintiff with the capacity to grasp and finger frequently. Moreover, the fact that the record lacks a specific assessment from a treating and examining provider regarding the extent of Plaintiff's limitation in using her hands should cause the Commissioner to consider on remand whether further development is needed to fill this gap.

through their lay assessment absent an adequate explanation, rooted in the record, to show how they reached their conclusion. *Id.* at 10 ("Medical evidence at both ends of the spectrum, however, is not substantial evidence for a finding that the extent of the disability is fifty percent capacity."); *see also Daniel W. v. Comm'r of Soc. Sec.*, No. 20-CV-1786-FPG, 2023 WL 3220502, at *3 (W.D.N.Y. May 3, 2023)("[T]he Court's deferential review does not give an ALJ the license to arbitrarily craft functional limitations."); *Gail F. v. Comm'r of Soc. Sec.*, No. 21-CV-120-FPG, 2022 WL 17578465, at *4 (W.D.N.Y. Dec. 12, 2022) ("[W]ith respect to a specific exertional limitation, the ALJ must tether the limitation to competent evidence and must provide a sufficient explanation to ensure 'meaningful judicial review.').

A remand is required for the ALJ to consider whether further development of the record is necessary and to provide an adequate analysis and explanation concerning the extent of Plaintiff's impairment in her ability to use her hands throughout a regular workday and workweek.

### *Remand*

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" *Butts v. Barnhart*, 388 F.3d

377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)).  Remand for further administrative proceedings, as here, is the appropriate remedy "[w]here there are gaps in the administrative record or the ALJ has applied an improper legal standard." *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999); *see also Rhone v. Colvin*, No. 13-CV-5766 (CM)(RLE), 2014 U.S. Dist. LEXIS 180514, at *28 (S.D.N.Y. Nov. 6, 2014).

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's request for Judgment on the Pleadings is GRANTED; the Commissioner's request for Judgment on the Pleadings is DENIED; and this case is REMANDED for further administrative proceedings consistent with this Decision and Order. The Clerk is directed to enter final judgment in favor of the Plaintiff and then close the file.

Dated: October 3, 2024          *s/ Gary R. Jones*

GARY R. JONES
United States Magistrate Judge